# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN WRIGHT | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-91 |
| WAYNE WEBB, *et al*. | * | |
| Defendants | * | |

## MEMORANDUM OPINION

In response to the above-captioned civil rights complaint filed pursuant to 42 U.S.C. § 1983, Defendants Webb, Bishop, Iames, LaRue, and Metz move to dismiss or for summary judgment. ECF No. 13. Plaintiff opposes the motion. ECF No. 25. The Court finds a hearing unnecessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' motion to dismiss is granted.

### I. Background

The facts as pleaded in the Complaint are accepted as true for purposes of this opinion. Plaintiff John Wright, an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services (DPSCS) and confined in North Branch Correctional Institution (NBCI), alleges that on July 1, 2014, he received a disciplinary ticket for possession of a weapon that was based on falsified information. ECF No. 1 at p. 2. Wright's cell was searched by Officers Marvin Metz and Shane LaRue and supervised by Sergeant Iames. *Id*. at p. 4. The search was prompted by the receipt of a "snitch note" which reported that Wright possessed a weapon and that Wright was "gonna get a staff member." ECF No. 1-2 at p. 2.

After removing Wright from his cell and handcuffing him, Metz and LaRue entered the cell to conduct the search. Shortly after, LaRue came to the cell door and asked Iames "what it's

(sic) gonna be?" to which Iames responded, "let it roll . . . let's teach this bitch a lesson." ECF No. 1, p.4. LaRue went back into the cell and returned with a closed laundry bag which contained a weapon inside. *Id.*

Wright was then removed from the tier and escorted to the holding cell where Iames and Metz strip searched him. ECF No. 1 at p. 4. During the strip search, Wright turned over two medical prescribed knee braces which were inspected by Metz and found to have no damage, only normal wear and tear. However, Wright attaches to his Complaint a medical note which indicates that the knee braces were found disassembled and that the knee sleeve was being used "other than for its intended purpose." ECF No. 1-4. At the conclusion of the strip search, Iames confiscated the knee braces and commented to Wright, "I told you not to fuck with me." ECF No. 1 at p. 5.

Wright was then placed in segregation pending an adjustment hearing on a weapons possession infraction. ECF No. 1 at p. 5. The Notice of Infraction at issue reads in pertinent part:

> On July 1, 2014 at approximately 0800 hours Sergeant B.G. Iames was sorting the housing unit mail when he came across a letter stating that the inmate in Cell 2-A-54 *has a weapon hidden inside his laundry detergent* and was planning on assaulting staff. I, accompanied by Sergeant B.G. Iames and Officer Metz approached cell 2-A-54 single occupied by Inmate John Wright . . . to conduct a cell search. Sergeant Iames placed handcuffs on Inmate Wright . . . while the search was being conducted. During the search, I Ofc. S. LaRue discovered a homemade weapon inside a laundry detergent bag. The weapon was made from two shaving razors and a razor handle. Inmate Wright was immediately escorted off the tier and taken to HU2 C/D holding cell and stripped searched by myself, Ofc. Metz and Sergeant Iames.

ECF 1-5 at p. 2 (emphasis supplied). The informant's "letter" does not mention that the weapon was hidden in a laundry bag, only that "A-54 has a weapon says he's gonna get a staff member for fucking with him says he wants one of those bitches on daylight." ECF 1-2 at p. 2.

2

The disciplinary hearing on this infraction was postponed after Wright requested the original color photograph of the alleged weapon. *Id*. The hearing resumed on July 10, 2014, over which Officer Sipes presided. *Id*. Wright asserts that Sipes agreed that the weapon did not come out of the laundry bag, contrary to LaRue's report, and that the snitch note did not indicate the location where the weapon was hidden. In addition, Wright also asserts that Sipes' review of video footage from the search was material to Sipes finding Wright not guilty of the weapon charge. *Id*. Wright also avers that the video footage of the search established that the knee braces were not in his cell, but were rather on his person and were not damaged beyond normal wear and tear. ECF No. 1 at p.6. As a result, Wright was found not guilty as to the infraction related to his damaged knee braces. *Id*.

On July 16, 2014, Wright filed a grievance, known as an ARP, alleging officer misconduct surrounding the weapons possession infraction. ECF No. 1-7. The Warden dismissed the ARP based on the findings of the Internal Investigations Unit (IIU). *Id.* at p. 2. Wright appealed the Warden's response to the Commissioner of Correction, Wayne Webb, alleging that his claim had never been investigated by the IIU and that the Warden was involved in covering up the incident. ECF No. 1, p. 7. Wright's appeal was found to be meritorious in part because IIU had not investigated his case. ECF No. 1-7 at p. 6. In addition, the Commissioner's response confirms that officers had filed a false report against him, but did not disclose what, if any, disciplinary measures were taken against staff. *Id*. The response further indicates that the Warden would be reminded to report all staff misconduct to the IIU and that "no further action or remedy will be taken through the ARP process." *Id*.

Wright filed an appeal with the Inmate Grievance Office (IGO) on November 16, 2014. ECF No. 1 at p. 7. A hearing was held on the grievance on February 9, 2015, and his grievance

was subsequently dismissed. *Id*. Wright states he filed for judicial review and "hearing was granted with Memorandum due by June 24, 2016." He does not provide the result of the judicial review. *Id*.

Wright notes that NBCI conducted an internal investigation of his claim that a false report was filed against him and during that investigation the video footage was erased. *Id*. He states that erasure of the video is contrary to policy which requires that video footage be preserved for five years. *Id*. As relief, Wright seeks declaratory and injunctive relief as well as compensatory and punitive damages. *Id*. at p. 8.

Defendants do not dispute that LaRue improperly claimed in the written notice of infraction that an informant had disclosed where the weapon was located in Wright's cell because LaRue had not seen the informant's note before writing it. *See* ECF No. 13-3 at pp. 16 – 19 (IGO decision in IGO No. 20142087, findings of fact).[1] Defendants also do not dispute that the IIU failed to investigate the claim as initially asserted but rather argue that failure was rendered moot by the internal investigation conducted after Wright filed his complaint with the IGO. *Id*. at p. 24. Further, Defendants note that Wright's claims were fully adjudicated through the inmate grievance process.

## II. Standard of Review

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) properly is granted when a complaint does not include sufficient factual allegations to render the plaintiff's claims facially plausible, or to permit reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To assess a motion to dismiss, a court takes as true all well-pleaded factual allegations

---

[1] Wright indicates in his Opposition Response that this is the only IGO decision referenced by Defendants that is relevant to the allegations in the complaint. ECF No. 25 at p. 2.

and makes all reasonable inferences in the favor of the plaintiff. *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 1999). A court may consider materials attached to the Complaint when reviewing a Rule 12(b)(6) motion to dismiss. *Id.* However, when determining if a plaintiff has stated a valid claim, a court does not credit conclusory statements or a plaintiff's legal conclusions, even when the plaintiff purports them to be allegations of fact. *See Iqbal*, 556 U.S. at 678–79; *Giarrantano v. Jonson*, 520 F.3d 298, 302 (4th Cir. 2008). Further, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665.

Because Wright is proceeding *pro se*, the Court must construe his complaint liberally to allow for the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Liberal construction requires that if the Court can reasonably read the Complaint to state a valid claim, it must do so; however, the Court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed."). The Court is not "required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.* (internal quotation marks omitted). Neither should the Court "conjure up questions never squarely presented . . . . Even in the case of *pro se* litigants, [district courts] cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**III.    Discussion**

*A.     Supervisory Defendants*

The only claims raised against Warden Bishop and Wayne Webb concern their responses to Wright's ARPs. To the extent Wright asserts a violation of his constitutional or statutory rights under 42 U.S.C. § 1983, Wright cannot establish supervisor liability under a theory of *respondeat superior*. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Supervisor liability in this context is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To demonstrate supervisory liability under § 1983, the Plaintiff must plausibly sufficient facts to show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Wright fails to plead any facts to support that Bishop or Webb authorized an unconstitutional act. Wright instead baldly asserts that Bishop "failed to investigate" or "protect Plaintiff from potential harm" by allowing his "staff" to violate some non-specific DOC and institutional policies and guidelines. Further Wright does not aver how Bishop's failure to

6

investigate Wright's placement on the "top tier" somehow contravenes medical orders or any resulting injury. Similarly Wright's assertions that Captain David Wolford[2] did not conduct an investigation and failing to hold staff "accountable" also fails. The claim is no more than a bald assertion of liability premised on a theory of *respondeat superior*. The supervisor related claims, therefore against Webb and Bishop must be dismissed.

*B.     Due Process Claim*

Although the complaint is less than a model of clarity, liberally construed, it attempts to assert a violation of due process. As a prisoner charged with a disciplinary infraction, Wright is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These include advance written notice of the charges against him, a hearing at which he can call witnesses and present evidence consistent with institutional safety and correctional concerns, and a written decision. *Id*. at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Violations of DOC rules governing adjustment hearings, standing alone, does not necessarily amount to an equal a due process violation. *Riccio v. Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1993) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

Importantly, courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Rather such

---

[2]     Wolford was not served with the complaint because he retired from his position on March 31, 2016. ECF No. 6 at p. 2. Had Wolford been served he would be entitled to have the claims asserted against him dismissed.

findings will be disturbed only when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). Wright affirmatively pleads that he was found "not guilty" of the weapons infraction, and attaches documentation confirming the same. ECF No. 1, at 1-6. Accordingly, the Court cannot adduce any due process violation in the Complaint. Wright was not punished in any way and availed himself of the full panoply of administrative remedies.

Less clear is the nature of Wright's claim regarding his knee braces. In his complaint, Wright appears to claim that in connection with his cell search, his knee braces had been intentionally broken so as to seem as if he possessed the braces as a weapon. In his response, however, Wright claims that his braces were "fully intact and in proper functioning order." ECF 25-1 at p. 2. In any event, Wright fails to aver that he was disciplined or otherwise suffered a denial of due process in connection with removing his knee braces. Accordingly, the Complaint fails to state a claim on which relief may be granted, and so is dismissed.

Wright argues that Defendants had lodged false weapons infractions against him in retaliation for Wright's having filed administrative grievances, ECF No. 25-1 at p. 2 & 3. This does not save the Complaint. To sustain a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Importantly, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim). Furthermore, where "there is no impairment

of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

Here, Wright fails to plead any facts supporting a retaliation claim. To be sure, Wright uses the word "retaliation" throughout his administrative claims, and asks this Court to order that such retaliation cease. But otherwise the Complaint is wholly lacking in any factual support to make plausible this claim. In his response, Wright further describes that "the actions of the Defendants have placed undue pain and suffering upon the Plaintiff from defamation[3] of character, wrongful loss of therapeutic device (knee braces), false charges based on fraudulent evidence, retaliation from officers, malice, and other wrongful actions by officers." ECF 25-1 at p. 4. Even with these additional representations, Wright fails to make out a retaliation claim.[4] Accordingly, the Complaint must be dismissed.

A separate Order follows.

| _____3/1/18_____ | _____/S/_____ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

---

[3] Defamation does not state a cognizable claim of constitutional dimension under the Civil Rights Act. *See Paul v. Davis*, 424 U.S. 693, 712 (1976).

[4] The closest that Wright arguably comes to stating a retaliation claim is his argument that he was "being framed by Sergeant Brian Iames, for filing Complaints against North Branch Correctional Institution Officers." ECF No. 1, p. 6. Standing alone, however, this assertion does not explain how Wright's constitutional rights were affected by the claimed "framing." According to the Complaint, Wright successfully challenged the infraction and was given all established levels of administrative review. Nor does Wright plead with any specificity any relation between his filing unspecified other complaints against non-named officers and the events described in this Complaint.